# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

United States District Court
Middle District of Louisiana

FILED

March 27, 2012

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Dell Dimension E520 Service Tag Number JVCKYB1
577 Oak Villa Boulevard, Baton Rouge, LA

)
) Mag.
) Case No. 12- 11-SCR
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Dell Dimension E520 Service Tag Number JVCKYB1

located in the _____Middle_____ District of _____Louisiana_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "A"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 7752 | Possession and Receipt of Child Pornography |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thomas V. Tedder, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 27, 2012

_____
*Judge's signature*

City and state: Baton Rouge, Louisiana

Stephen C. Riedlinger, Magistrate Judge
*Printed name and title*

USM w/warrant
Lemelle

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE :
SEARCH OF DELL DIMENSION E520 :
SERVICE TAG NUMBER JVCKYB1 : Case No. Mag. 12-11-SCR

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Thomas V. Tedder, a Special Agent ("SA") with the Federal Bureau of Investigation (FBI), New Orleans Division, Baton Rouge Resident Agency, being duly sworn, depose and state as follows:

1. I have been employed as a SA of the FBI since September 23, 2001, and am currently assigned to the New Orleans Division, Baton Rouge Resident Agency. Since joining the FBI, I have been involved in investigations of Internet Crimes to include child pornography, internet intrusions, internet fraud, violent crimes, juvenile prostitution, cargo and car theft schemes, and terrorist activity. Since August 2003, I have been assigned to investigate Sexual Exploitation of Children ("SEOC") violations of federal law. I have gained expertise in conducting such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have successfully completed Online Undercover training for the FBI Innocent Images National Initiative and I am currently certified as an Online Undercover Agent. I have received specialized training in seizing, copying, and analyzing computer systems and data, and have been involved in the examination of numerous computers and related electronic storage devices. I am certified by the International Association of Computer Investigative Specialists ("IACIS") as a Computer Forensic Certified Examiner ("CFCE") and I am certified to perform searches and seizures of computer hardware and software. I am certified by the

1

Case 3:12-mj-00011-SCR   Document 1   03/27/12   Page 2 of 20

FBI as a Computer Analysis and Response Team ("CART") Forensic Examiner ("FE"). I have also attended and received training at several "Crimes Against Children" seminars with regard to child exploitation.

2. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. I am submitting this affidavit in support of a search warrant authorizing the seizure and search of a Dell Dimension E520 Computer bearing service tag # JVCKYB1 (**"the Computer"**) for the items specified in Attachment A, which items constitute instrumentalities, fruits, and evidence of violations of federal criminal law. As will be shown below, there is probable cause to believe that **the Computer** contains evidence that an individual has possessed, received, and/or distributed visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256)[1] ("child pornography") in violation of Title 18, United States Code, Section 2252. I am requesting authority to search **the Computer** for the items specified in Attachment A and to seize all items listed in Attachment A as instrumentalities, fruits, and evidence of a crime.

4. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of a violation of Title 18, United States Code,

---

[1] "[M]inor" means "any person under the age of eighteen years." 18 U.S.C. § 2256(1). "[S]exually explicit conduct" means actual or simulated - "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2).

2

Case 3:12-mj-00011-SCR   Document 1   03/27/12   Page 3 of 20

Section 2252, are presently located on the Dimension E520 Computer bearing service tag # JVCKYB1.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

5. Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

6. The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

7. Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

8. A computer is a device that individuals retain for extended periods of time due to the expense of obtaining such a device. Additionally, a computer has features that allow for the retention of data for the life of the device.

9. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

10. "Removable digital media" is any form of media capable of storing digital files. Removable digital media can be in many forms including, but not limited to, external hard drives, flash drive (also referred to as thumb drives or jump drives), and secure digital (SD) media cards. Removable digital media is used for the storage and/or transfer of files between computers and/or between computers and portable devices including, but not limited to, Personal Digital Assistants ("PDA's"), digital cameras, and MPEG Layer 3 ("MP3") devices.

11. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child

4

pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, e.g., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally (for example, traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

14. A growing phenomenon on the Internet is peer to peer file sharing ("P2P"). P2P file sharing is a method of communication available to Internet users through the use of special publicly available software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to setup file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting a search for files that are currently

5

being shared on the network. The user can search the network using keyword searches or by browsing shared directories on the network. The user can then download files from the searched term or browsed networked computer. The download of the file is achieved through a connection between the computer requesting the file and the computer containing the file.

15. For example, a person interested in obtaining child pornography images would open the P2P software application on his/her computer and conduct a search for files using terms associated with child pornography such as "preteen sex" or "PTHC". The search is sent out over the network of computers using compatible P2P software. The results of the search are returned to the user's computer and displayed. The user selects from the results displayed the file(s) he/she wants to download. The file(s) is downloaded from the computer hosting the file. The downloaded file is stored in the area previously designated by the user. The downloaded file(s) will remain there until moved or deleted.

16. A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four numbers separated by decimal points, is unique to a particular computer during an online session. The IP address provides a unique location making it possible for data to be transferred between computers.

17. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

6

18. Third party software is available to identify the IP address of the P2P computer sending or receiving the file and to identify if parts of the file came from one or more IP addresses. Such software monitors and logs Internet and local network traffic.

## THE INVESTIGATION

19. On March 26, 2012, the store manager of a computer store in Baton Rouge, Louisiana, at 577 Oak Villa Boulevard, contacted FBI Special Agent Joshua Morrill. The store manager (W1) stated that on March 15, 2012, an individual named S.Y. brought a Dell Dimension E520 Computer bearing service tag # JVCKYB1 ("**the Computer**") to the computer store. S.Y. said that **the Computer** was locking up after windows loaded. S.Y. asked the computer store to diagnose the problem and call and give an estimate for the repair. After an estimate was given, S.Y. said he/she wanted to purchase a new computer instead of repairing the old one. S.Y. also requested all data from **the Computer** be backed up and restored onto the new computer. S.Y. provided two phone numbers for purposes of contacting S.Y.

20. On March 26, 2012, your affiant interviewed the computer technician (W2) that was tasked with transferring the data as requested by S.Y. W2 has been a computer technician for approximately 8 years. W2 stated he began work on backing up the data from **the Computer** to restore onto a new computer. During the backup process, W2 installed the hard drive from **the Computer** into a technician computer to copy the files. As part of the backup and restore process, W2 reviewed folders on **the Computer's** hard drive to determine if the folder contained files to backup. W2 stated he was in the process of copying other folders when he previewed a folder on **the Computer** hard drive which was

7

named incomplete. W2 opened the folder named incomplete and saw three files with file names that indicated children engaging in sexual activity.

21. After seeing the file names, W2 again noted the files were contained in a folder named incomplete. As a computer technician, W2 knew that file sharing programs such as Limewire use the incomplete folder as a temporary file storage area for files that have not completely downloaded. W2 stated he remembered partial file names for the three files he believed to be indicative of child pornography. The partial file names were:

    A.   17 YO
    B.   16 YO – virgin
    C.   7 YO – in bathroom PTHC

22. W2 then changed the folder view of the incomplete folder to a thumb nail preview to confirm if the 7 YO – in bathroom PTHC file was a file that contained possible images of child pornography. W2 described the thumbnail image of the movie file as a young pre-adolescent white female with her pants pulled down to her knees. W2 did not play the movie file and stopped because he believed it to be child pornography.

23. After seeing the thumbnail of the 7YO – in bathroom PTHC file, W2 stated he deleted all of the files that had been copied to the technician computer and called W1 to report what he had seen. **The Computer** is currently being held by the computer store and will be provided to the FBI upon request.

24. Based on your affiant's knowledge and experience in investigating offenses involving child pornography, your affiant has learned that a number followed by the term "YO" is used to describe the age of an individual. Your affiant has also learned that the term "PTHC" is frequently associated with images of child pornography. "PTHC" is an acronym for "Pre Teen Hard Core."

8

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

25. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

   a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

   b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or

9

normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

26. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

27. In addition, there is probable cause to believe that **the Computer** and its storage devices are all instrumentalities of the crime(s), within the meaning of 18 U.S.C. §§ 2251 through 2256, and should all be seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

28. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a. examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

10

c. surveying various file directories and the individual files they contain;

d. opening files in order to determine their contents;

e. scanning storage areas;

f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

29. I have consulted with FBI Supervisory Special Agent ("SSA") James T. Clemente (retired) who is a nationally recognized expert in the areas of Child Sexual Victimization, Child Pornography and Sex Offender Behavior. He has provided sworn expert testimony in these fields in Federal, State and Military Courts during hearings and trials.

30. SSA Clemente worked in the Behavioral Analysis Unit of the FBI for 8 years. SSA Clemente was a special agent with the FBI from 1987 until 2010. As a member of the Behavioral Analysis Unit, SSA Clemente consulted on child exploitation cases throughout the United States and around the world. Since 1998, he has received four Exceptional Performance Awards from the Department of Justice and five Superior Service Awards from the FBI as well as a Director's Certificate of Commendation. In addition, he has received numerous letters of commendation from state, federal, and local law enforcement in connection with his work in the Behavioral Analysis Unit.

31. SSA Clemente's training has involved a significant number of specialized courses in the area of child exploitation, including, but not limited to the following: Innocent Images

On-Line Sex Crimes Against Children; National Crimes Against Children; On-Line Sex Crimes Against Children; Clinical Forensic Psychology; Behavioral Analysis of Violent Crime; Missing and Exploited Children Seminar; Research Methodologies; MO, Ritual & Signature Advanced Seminar; and Criminology.

32. SSA Clemente has assisted in the writing of numerous search warrant affidavits. He has given over 100 presentations and lectures to local, state and federal law enforcement agencies, prosecutors, and health care professionals throughout the United States on various topics related to child exploitation, including, but not limited to the following topics: Behavioral Analysis of Child Sex Crimes Offenders, On-Line Sex Crimes Against Children, and Equivocal Death Investigations.

33. As a member of the Behavioral Analysis Unit, SSA Clemente has analyzed and consulted on approximately two hundred child sexual exploitation and victimization cases a year. His analyses are based on all available evidence, including chat records, image collection analysis, collection themes, possession of erotica, possession of sexual paraphernalia, fantasy literature and writings, other relevant acts, and background information. The vast majority of the cases he has analyzed have involved either Preferential or Situational Sex Offenders. His role in these cases has varied as follows: analyzing investigative results for the purpose of making investigative suggestions, providing expert affidavits for search warrant applications, providing interview strategies for subjects and victims, and consulting with local, state and federal prosecutors on trial strategies. In addition, SSA Clemente has interviewed approximately 100 child sex offenders himself and has consulted on the interviews of hundreds more. A behavioral assessment is not a clinical

12

Case 3:12-mj-00011-SCR   Document 1   03/27/12   Page 13 of 20

diagnosis; rather, it is a law enforcement tool used to identify and predict offender behavior.

34. SSA Clemente has advised me of the following traits and characteristics that are generally found to exist and be true in cases involving individuals who collect child pornography:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

   b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

   c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in the privacy of their homes or in another secure location.

35. The presence and storage of child pornography on **the Computer**, as well as the location of child pornography in an area consistent with P2P file sharing activity, are consistent with a collector of child pornography as described by SSA Clemente.

## DESCRIPTION OF THE ITEM TO BE SEIZED AND SEARCHED

36. The item to be seized and searched is a Dell Dimension E520 Computer bearing service tag # JVCKYB1 (**"the Computer"**) located at 577 Oak Villa Boulevard in Baton Rouge, LA.

## CONCLUSION

37. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses are located on **the Computer**, in violation of 18 U.S.C. § 2252.

38. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the seizure of **the Computer** and the search for the items listed in Attachment A.

_____
Thomas V. Tedder
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 27th day of March 2012.

_____
HONORABLE STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## LIST OF ITEMS TO BE SEARCHED FOR

1. Computer software, computer related documentation, computer passwords and data security devices, that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5. Any and all address books, names, and lists of names and addresses of individuals who may have been in communication by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8)

or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, IP addresses, other digital data files and web cache information) identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, IP addresses, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, IP addresses, other digital data files and web cache information) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to whose with an interest in child pornography.

9. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages,

IP addresses, other digital data files and web cache information) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, papers, e-mail messages, chat logs and electronic messages, IP addresses, other digital data files and web cache information) that concern any accounts with an Internet Service Provider.

11. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, letters, papers, e-mail messages, chat logs and electronic messages, IP addresses, other digital data files and web cache information) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12. Any and all visual depictions of minors.

13. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

18

14. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the ownership of the Dell Dimension E520 Service Tag # JVCKYB1 described above.

15. Any and documents, records, or correspondence, in any format of medium, reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

19

Case 3:12-mj-00011-SCR   Document 1   03/27/12   Page 20 of 20